UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK HALE MAYHEW,

               Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,[1]

               Defendant.

CASE NO. 12-cv-5902-BHS-JRC

REPORT AND
RECOMMENDATION ON
PLAINTIFF'S COMPLAINT

Noting Date: December 27, 2013

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 14, 15, 16).

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

1    After considering and reviewing the record, the Court finds that the ALJ's

2    decision is without harmful legal error and based on substantial evidence in the record as

3    a whole. Plaintiff has not met his burden to demonstrate that he suffers from further

4    functional limitations with respect to his carpal tunnel syndrome than found by the ALJ,

5    and the ALJ's rejection of the medical opinion of Dr. Lawrence Smith, Ph.D. is supported

6    by specific and legitimate reasons supported by substantial evidence in the record as a

7    whole. Therefore, this matter should be affirmed.

8                                    BACKGROUND

9    Plaintiff, MARK HALE MAYHEW, was born in July, 1971 and was thirty nine

10   years old on the amended alleged date of disability onset of January 4, 2011 (*see* Tr. 10,

11   27, 146). Plaintiff was in the military and has past relevant work as a data entry clerk,

12   intelligence clerk and trainer (*see* Tr. 18-19). According to plaintiff's testimony, he was

13   "doing pretty good in the military until [he] got hurt" (Tr. 31). According to one doctor's

14   description:

15
    > He had a neck injury in July of 2010 while working out at gym at Fort
16   > Lewis and he did a little, overdid it, and then got himself injured in the neck
    > and strained it. Subsequently, he developed numbness in fingers, both
17   > hands, pain in the upper lateral aspects of the forearms.

18   (Tr. 258).

19   Plaintiff has at least the severe impairments of obesity; post traumatic stress

20   disorder ("PTSD"); major depressive disorder; cervicalgia, back pain; epicondylitis and

21   shin splints (*see* Tr. 12).

22

23

24

1    At the time of the hearing, plaintiff was living in a condo owned by his parents,

2   having separated from his wife (Tr. 29). Plaintiff has responsibility for his children, who

3   are ages five and eight, for a couple of hours in the afternoons three days a week, as well

4   as one or two nights every other week (*see id.*).

5                                    PROCEDURAL HISTORY

6        On February 22, 2011, plaintiff filed an application for disability insurance

7   ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act (*see* Tr.

8   10, 144-52). The application was denied initially, and following reconsideration, in 2011

9   (*see* Tr. 10). Plaintiff's requested hearing was held before Administrative Law Judge

10  Rebekah Ross ("the ALJ") on February 1, 2012 (*see* Tr. 23-64). On February 24, 2012,

11  the ALJ issued a written decision in which the ALJ concluded that plaintiff was not

12  disabled pursuant to the Social Security Act (*see* Tr. 7-22).

13       On August 10, 2012, the Appeals Council denied plaintiff's request for review,

14  making the written decision by the ALJ the final agency decision subject to judicial

15  review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court

16  seeking judicial review of the ALJ's written decision on October 11, 2012 (*see* ECF No.

17  1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on

18  January 3, 2013 (*see* ECF Nos. 11, 12).

19       In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or

20  not the ALJ erred in failing to find plaintiff's carpal tunnel to be a severe impairment; (2)

21  Whether or not the ALJ erred in evaluating the medical evidence provided by Dr.

22  Lawrence W. Smith, Ph.D.; (3) Whether or not the ALJ erred in failing to incorporate

1   limitations from plaintiff's carpal tunnel syndrome and from the opinion of Dr. Smith

2   into plaintiff's residual functional capacity ("RFC"); and, (4) Whether or not the ALJ's

3   errors are harmless (*see* ECF No. 14, p. 1).

4                                    STANDARD OF REVIEW

5          Plaintiff bears the burden of proving disability within the meaning of the Social

6   Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

7   the fifth and final step of the sequential disability evaluation process. *See Bowen v.*

8   *Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to

9   engage in any substantial gainful activity" due to a physical or mental impairment "which

10  can be expected to result in death or which has lasted, or can be expected to last for a

11  continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A),

12  1382c(a)(3)(A).  A claimant is disabled pursuant to the Act only if claimant's

13  impairment(s) are of such severity that claimant is unable to do previous work, and

14  cannot, considering the claimant's age, education, and work experience, engage in any

15  other substantial gainful activity existing in the national economy. 42 U.S.C. §§

16  423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

17  1999).

18         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

19  denial of social security benefits if the ALJ's findings are based on legal error or not

20  supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

21  1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

22  1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such "'relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.*

*Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not

substantial evidence supports the findings by the ALJ, the Court should "review the

administrative record as a whole, weighing both the evidence that supports and that

which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th

Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "'the

Commissioner's decision is (1) free of legal error and (2) is supported by substantial

evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v.*

*Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases));

*Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d

530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of

administrative law require us to review the ALJ's decision based on the reasoning and

actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit

what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219,

1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other

citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we

may not uphold an agency's decision on a ground not actually relied on by the agency")

(*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals,

legal errors committed by the ALJ may be considered harmless where the error is

irrelevant to the ultimate disability conclusion when considering the record as a whole.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 5

1  *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*,

2  556 U.S. 396, 407 (2009).

3                                    <u>DISCUSSION</u>

4

5  **1.  Whether or not the ALJ erred in evaluating plaintiff's carpal tunnel**

6      **syndrome**

7          Plaintiff first contends that the ALJ erred in not finding that his carpal tunnel

8  syndrome ("CTS") was a severe impairment (*see* Opening Brief, ECF No. 14, p. 1).

9  According to plaintiff, this error is not harmless because the ALJ also erroneously

10 excluded from plaintiff's residual functional capacity ("RFC") functional limitations

11 resulting from plaintiff's CTS (*id.*). Defendant argues that CTS was rejected properly by

12 the ALJ on the basis that it was not well documented by objective medical evidence (*see*

13 Response, ECF No. 15, pp. 4-8).

14         Step-two of the administration's evaluation process requires the ALJ to determine

15 if the claimant "has a medically severe impairment or combination of impairments."

16 *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§

17 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The Administrative Law Judge "must

18 consider the combined effect of all of the claimant's impairments on her ability to

19 function, without regard to whether [or not] each alone was sufficiently severe." *Smolen,*

20 *supra*, 80 F.3d at 1290 (citations omitted).

21         An impairment is "not severe" if it does not "significantly limit" the ability to

22 conduct basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work

activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'"  *Smolen, supra*, 80 F.3d at 1290 (*quoting* Social Security Ruling "SSR" 85-28) (*citing Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)). The step-two analysis is "a *de minimis* screening device to dispose of groundless claims," when the disability evaluation process ends at step two. *Smolen, supra,* 80 F.3d at 1290 (*citing Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing SSR 96-7p). If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *Bowen, supra*, 482 U.S. at 146. Regarding the establishment of a disability, it is the claimant's burden to "'furnish[]

1  such medical and other evidence of the existence thereof as the Secretary may require.'"

2  *Bowen, supra*, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing Mathews v.*

3  *Eldridge*, 424 U.S. 319, 336 (1976)) (footnote omitted).

4      The ALJ included the following discussion in her written decision regarding her

5  step two determination:

6
7      However, carpal tunnel syndrome is not well documented with objective
       findings such as positive Tinel signs or Phalen Maneuver. Nevertheless,
8      any potential limitation is addressed in the assigned residual functional
       capacity, which limits the claimant to frequent fingering instead of
9      constant fingering.

10  (Tr. 13).

11      Plaintiff argues that the ALJ's finding that CTS was not "well documented with

12  objective findings such as positive Tinel signs or Phalen Maneuver" (*id.*) is not supported

13  by substantial evidence in the record as a whole, and points to a February 17, 2011

14  electromyographic study yielding a "electrodiagnostic evidence for a right median

15  entrapment neuropathy at the carpal tunnel" (ECF No. 14, p. 4 (*citing* Tr. 323)). Plaintiff

16  also points out that on February 17, 2011, a physical examination demonstrated a positive

17  Phalen's on the right (*id.* (*citing* Tr. 322)).

18      In response, defendant refers to Dr. Santa Ana's findings following examination

19  on February 11, 2011, noting that while Phalen's maneuver showed numbness and

20  tingling in the median nerve distribution of both wrists, "Tinel's signs were negative for

21  the medial and ulnar nerves" (*id.* (*citing* Tr. 344)). After this examination led to the

22  request of the EMG indicated above, plaintiff's subsequent February 17, 2011

23

24

examination revealed negative Tinel's at the elbow and wrist, and negative carpal

compression, although it also revealed a positive Phalen's on the right (*see* Tr. 322).

Defendant also references that the EMG evidence was interpreted by Dr. John R.

Santa Ana, D. O. as affecting "the sensory fibers only, and [] therefore categorized as

mild" (ECF No. 15, p. 5 (*citing* Tr. 323)). In addition, defendant references the

examination subsequent to the EMG, by Dr. Rama G. Eachempati, M.D. on April 29,

2011, in which Dr. Eachempati indicates that he is evaluating specifically plaintiff's CTS

(*id.* (*citing* Tr. 257-59, 274-76)). Dr. Eachempati opined that plaintiff exhibited a

"questionable positive Phalen's test on the right side" (*id.* at pp. 5-6 (*citing* Tr. 259,

276)). The Court also notes that Dr. Eachempati indicated additionally that "Tinels' sign

at the elbow and wrist were normal" (Tr. 259).

Although the ALJ's finding that plaintiff's carpal tunnel syndrome is not well

documented with objective findings is supported by substantial evidence in the record as

a whole, based on the evidence discussed above, the Court concludes that sufficient

objective evidence supports the existence of plaintiff's CTS and supports the finding that

it is a severe impairment. Therefore, the ALJ's finding at step two that plaintiff's CTS is

not severe is error.

However, despite finding that the CTS is not a severe impairment, the ALJ

included a functional limitation in plaintiff's RFC as a result of plaintiff's carpal tunnel

syndrome, specifically, the ALJ's RFC limits plaintiff "to frequent fingering instead of

constant fingering" (*see* Tr. 13, 15).

1    The Court concludes that the ALJ's assignment of this limitation to plaintiff's

2    RFC in the context of this record further demonstrates that the carpal tunnel syndrome is

3    a severe impairment. Therefore, because plaintiff's CTS would not require

4    accommodation into the RFC if it had no more than a minimal effect on plaintiff's ability

5    to work, the ALJ committed legal error at step two of the sequential disability evaluation

6    process. However, the ALJ did not stop her analysis at step two, as she found that

7    plaintiff suffered from other severe impairments.

8        Defendant alternatively contends that even if the ALJ erred in failing to find at

9    step two that plaintiff's CTS was a severe impairment, plaintiff has failed to demonstrate

10   that the error was not harmless error.

11       The Ninth Circuit has "recognized that harmless error principles apply in the

12   Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

13   (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th

14   Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the

15   record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court

16   also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error

17   is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.*

18   (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008))

19   (other citations omitted). The court noted the necessity to follow the rule that courts must

20   review cases "'without regard to errors' that do not affect the parties' 'substantial

21   rights.'" *Id.* at 1118 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28

22   U.S.C. § 2111) (codification of the harmless error rule)).

1    Here, plaintiff argues that the alleged error is not harmless because the ALJ failed

2    to limit plaintiff to occasional fingering, as the ALJ limited plaintiff to frequent fingering

3    only (*see* Opening Brief, ECF No. 14, p. 8). While it is true that the ALJ limited plaintiff

4    to frequent fingering only, plaintiff has not demonstrated that he is limited to occasional

5    fingering, and it is a claimant's burden to "'furnish[] such medical and other evidence of

6    the existence [of a disability] as the Secretary may require.'" *See Bowen, supra*, 482 U.S.

7    at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing Mathews v. Eldridge*, 424 U.S. 319,

8    336 (1976)) (footnote omitted).

9         The ALJ gave significant weight to the opinion of Dr. Jeffery Merrill, M.D., non-

10   examining state agency physician (*see* Tr. 17). As noted by the ALJ, Dr. Merrill opined

11   that plaintiff only was limited to "frequent handling with the right extremity" (*see id.*

12   (*citing* Tr. 82-83 (Exhibit 4A/7-8))). Although the ALJ found "a slightly more limited

13   exertional capacity than Dr. Merrill," the ALJ also found that "Dr. Merrill's opinion is

14   consistent with the claimant's objective testing, his conservative course of treatment and

15   the weight of the medical evidence" (*id.*).

16        Plaintiff has not demonstrated harmful error in the ALJ's decision, because

17   although the ALJ failed to classify plaintiff's CTS as a severe impairment, the ALJ

18   nevertheless credited the consulting physician's opinion that plaintiff was limited to

19   frequent handling with the right extremity. The Court concludes that plaintiff has not

20   demonstrated that he was more limited as a result of his CTS than was opined by the

21   consulting physician and was found by the ALJ in the ALJ's RFC. The Court concludes

1  that any error by the ALJ at step two did not affect the ultimate determination, and is

2  harmless.

3     **2.   Whether or not the ALJ erred in his analysis of the medical evidence**

4        **provided by Dr. Lawrence W. Smith, Ph.D.**

5     Plaintiff contends that the ALJ failed to provide legitimate and specific reasons for

6  failing to credit fully the medical opinions of examining psychological doctor, Dr.

7  Lawrence W. Smith, Ph.D. Defendant contends that the reasons provided were legitimate

8  and specific and supported by substantial evidence in the record. Defendant also points

9  out that the ALJ's findings are supported by the opinion of examining physician, Dr.

10  Mary Lang-Furr, M.D., to whose opinions the ALJ gave significant weight (*see* ECF No.

11  15, p. 9 (*citing* Tr. 16, 17-18, 246-47)). As noted by defendant, Dr. Lang-Furr assigned

12  plaintiff a global assessment of functioning ("GAF") of 65, generally indicative of mild

13  symptoms overall (*id.* (*citing* Tr. 246)).

14     The Court notes that Dr. Lang-Furr is an examining  psychiatrist (M.D.) who

15  opined that plaintiff had "the ability to perform simple and repetitive tasks based on his

16  ability to complete a three-step command;" to "complete detailed and complex tasks

17  based on his ability to comply with every request during the interview today including

18  concentration questions, forward digit span of 6 digits, backward digit span of 5 digits,

19  demonstrated ability for abstraction, as well as demonstrated work history of functioning

20  highly" (*see* Tr. 246-47). Dr. Lang-Furr also noted that plaintiff, at that time, was "taking

21  on a very active role in child rearing, getting his children ready for school in the morning

22  and taking them to school, picking them up again, taking them to sports practice and he is

a very active parent which is in enough itself a detailed and complex task" (Tr. 247). Dr. Lang-Furr also opined that plaintiff could accept instructions, and could "interact with coworkers and the public based on his interactions with me today" (*id.*). She further opined that plaintiff could interact with supervisors "without problems" and that he "demonstrates very good social skills and states that he does not have a problem interacting with people" (*id.*). She opined that plaintiff "would not have interruptions in doing a workday or workweek based on his psychiatric condition" (*id.*).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999)).   If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d at 599, 601).   The

ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if an examining doctor's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ included the following in her written decision:

> Regarding the claimant's mental impairments, I give significant weight to the opinion of the consultative physician Mary Lang-Furr, M.D. (Exhibit IF). Dr. Lang-Furr opined that the claimant has the ability to accept simple and complex instructions and perform simple and more complex tasks. She opined that he was able to interact with coworkers, supervisors and the public, maintain a normal workday and perform work activities on a consistent basis with additional supervision. She added that the claimant would deal poorly with the stress he encountered in the work place but he is likely to respond well to mental health treatment. Dr. Lang-Furr also assessed the claimant to have a global assessment of functioning (GAF) score of 65 indicative of only

1    mild symptoms according to the Diagnostic and Statistical Manual of
     Mental Disorders, IV (DSM-IV, Page 32, Multiaxial Assessment).
2    This opinion is consistent with the claimant's work history, his reported
     activities and the medical record as a whole.

3

4  (Tr. 17-18).

5       When reviewing the medical opinion evidence, the ALJ also gave significant

6  weight "to the opinion of Dr. Patricia Hyatt Ph.D., who also assessed the claimant with a

7  GAF of 65 in June of 2011, indicative of only mild symptoms as noted above (DSM-iv,

8  Page 32, Multiaxial Assessment)" (Tr. 18). The ALJ found that Dr. Hyatt's assessment is

9  "consistent with the symptoms the claimant has displayed, his conservative course of

10 treatment and the opinions of Dr. Lang-Furr and Dr. Smith" (*id.*).

11      Finally, when discussing the mental impairments and medical opinion evidence,

12 the ALJ also included the following in her written decision:

13
14      Some weight is also given to the evaluation of Lawrence Smith, Ph.D.,
        who opined that the claimant's psychiatric symptoms cause occupational
        and social impairment with reduced reliability and productivity due to
15      his panic attacks, motivation, and difficulty getting along with others
        (Exhibit 7F/4).  However, this is not consistent with the claimant's
16      reports regarding his good relationship with his coworkers and his
        demonstrated ability to attend his classes through the Warrior Transition
17      Program.  Dr. Smith further opined that the claimant can maintain his
        own finances, maintain effective family role functioning and has no
18      difficulty understanding commands and assessed a GAF of 65 in June
        of 2011, which is consistent with the claimants mild symptoms and
19      demonstrated ability to function (Exhibit 7F/3, 4).  This portion of Dr.
        Smith's opinion is consistent with that of Dr. Lang-Furr above and is
20      supported by the claimant's reported activities.

21
22 (Tr. 18).

23      The ALJ failed to credit fully Dr. Smith's opinions regarding occupational and

24 social impairment with reduced reliability and productivity due to plaintiff's panic

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 15

attacks, motivation, and difficulty getting along with others (*id.* (*citing* Tr. 534 (Exhibit 7F/4))). The ALJ found that these particular opinions were not consistent with plaintiff's reports regarding "his good relationship with his coworkers and his demonstrated ability to attend his classes through the Warrior Transition Program" (*id.*).

First, regarding the ALJ's finding of plaintiff's good relationship with his coworkers, the treatment record of Dr. Smith indicates that plaintiff reported that before he joined the service, "the relationship with his co-workers was good" (Tr. 532). In addition, plaintiff reported to Dr. Lang-Furr "that he does not have problem[s] interacting with people" (Tr. 247). Dr. Lang-Furr opined that plaintiff demonstrated "very good social skills" (*id.*).

Although plaintiff disputes the ALJ's reliance on this note from the record, and although plaintiff offers another interpretation of the record, the Court concludes that the ALJ's assessment and interpretation is supported by substantial evidence in the record as a whole.

For the reasons stated and based on the relevant record, the Court concludes that the ALJ's finding that plaintiff had a sufficiently good relationship with his coworkers to reject Dr. Smiths's opinions regarding occupational and social impairment with reduced reliability and productivity due to plaintiff's panic attacks, motivation, and difficulty getting along with others is supported by substantial evidence in the record as a whole.

Although plaintiff also argues that this finding by the ALJ is inconsistent with her limitation on plaintiff to only occasional superficial interaction with coworkers, these findings by the ALJ are not inconsistent necessarily.

1     The ALJ also relied in part when rejecting Dr. Smith's opinion on plaintiff's

2     "demonstrated ability to attend his classes through the Warrior Transition Program" (*see*

3     Tr. 18). First, plaintiff argues that the ALJ's finding that this activity did not demonstrate

4     substantial gainful activity is inconsistent with the ALJ's use of this activity to fail to

5     credit fully Dr. Smith's opinion.

6     However, the Court concludes that the ALJ's finding that this activity did not

7     demonstrate substantial gainful activity is not inconsistent necessarily with the ALJ's

8     finding that such attendance was inconsistent with Dr. Smith's opinion that plaintiff

9     suffered from reduced reliability and productivity due to plaintiff's panic attacks,

10    motivation, and difficulty getting along with others. Although Dr. Smith opined that

11    plaintiff suffered from reduced reliability and productivity, plaintiff was able to maintain

12    attendance through the Warrior Transition Program. Plaintiff testified that "[t]hey would

13    have me show up in the morning just to check in, and then I'd go to an appointment if I

14    had one for the day" (Tr. 32).

15

16    Therefore, based on the record as a whole, the Court concludes that the ALJ's

17    finding of an inconsistency between Dr. Smith's opinion of reduced reliability and

18    productivity on the basis that he managed to attend his Warrior Transition Program is

19    supported by substantial evidence in the record as a whole. Although plaintiff is correct

20    that Dr. Smith's opinion is not inconsistent necessarily with plaintiff's attendance, it is

21    not the job of the court to reweigh the evidence: If the evidence "is susceptible to more

22    than one rational interpretation," including one that supports the decision of the

23    Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*,

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 17

278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d at 599, 601). Here, the Court concludes that both the ALJ's interpretation of the evidence and plaintiff's interpretation of the evidence on this issue of an inconsistency between Dr. Smith's opinion and plaintiff's attendance in the Warrior Transition Program is supported by substantial evidence in the record as a whole. *See id.*

Based on the relevant record as a whole, the Court concludes that the ALJ provided legitimate and specific reasons for her failure to credit fully Dr. Smith's opinion regarding reduced reliability and productivity due to plaintiff's panic attacks, motivation, and difficulty getting along with others, and that said reasons are supported by substantial evidence in the record as a whole.

The Court also concludes that the ALJ's assessment of the medical evidence is supported by substantial evidence in the record as a whole. Therefore, the ALJ's written decision should be upheld and this matter should be affirmed.

3. **Whether or not the ALJ considered properly plaintiff's RFC and propounded a proper hypothetical to the vocational expert**.

Plaintiff's remaining arguments are based on arguments already discussed with respect to the carpal tunnel syndrome limitations and the medical opinion of Dr. Smith. The Court already has upheld these findings and has found no harmful legal error.

<u>CONCLUSION</u>

Based on the stated reasons and the relevant record, the undersigned recommends that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) to the

Commissioner for further consideration.  **JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on December 27**,** 2013, as noted in the caption.

Dated this 4th day of December, 2013.


J. Richard Creatura
United States Magistrate Judge